# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

SHARON SILVERMAN                                                           PLAINTIFF

v.                            NO. 5:17CV00329 JLH

TRINITY VILLAGE; and DONNA STONE,
in her individual and official capacities                                  DEFENDANTS

## OPINION AND ORDER

On July 11, 2016, Sharon Silverman, an African American woman, was terminated from her position as administrator of assisted living at Trinity Village, a Pine Bluff senior living community. Silverman has sued Trinity Village as well as her former supervisor, Donna Stone, in her individual capacity and in her capacity as the Trinity Village executive director.[1] Although not divided into counts stating separate claims for relief, her complaint mentions discrimination on the basis of race, age, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the equal protection clause, and the Arkansas Civil Rights Act. *See* Document #1. It also mentions retaliation, wrongful discharge, breach of contract, and intentional infliction of emotional distress. *See id.* at 1-2, 6. The heart of her complaint seems to be that she was subjected to a hostile work environment and eventually was discharged because of her race and in retaliation for complaining to the EEOC.

The defendants filed an early motion for partial summary judgment on all claims under section 1983; all claims under the equal protection clause; any age and sex discrimination claims brought under section 1981; and the sex and age discrimination claims under Title VII and the

---

[1] Silverman initially also named the Trinity Village Board of Directors, in their individual and official capacities, but the Court previously dismissed all claims against these defendants without objection.

ACRA. Document #8. The Court granted the motion. It dismissed Silverman's claims under section 1983, section 1981, and the equal protection clause, and her claims for sex and age discrimination under Title VII and the ACRA. Document #24 at 2. The Court stated that Silverman's "race discrimination claims under Title VII and the Arkansas Civil Rights Act remain." *Id.*

The defendants now "move for summary judgment as to Plaintiff's remaining claims under Title VII and ACRA." Document #28 at 2. After reviewing the parties' briefs and its previous order, the Court explained that it mistakenly dismissed Silverman's section 1981 race discrimination claim and it directed the defendants to brief the merits of that claim. Document #50. They have done so. With her response to the defendants' motion for summary judgment, Silverman filed a sworn declaration in which she adds to her deposition testimony. The defendants have moved to strike portions of the declaration which, they say, directly contradict Silverman's testimony during her deposition. In addition, the defendants argued in their reply brief that Silverman's complaint failed to state a claim upon which relief can be granted for intentional infliction of emotional distress and breach of contract or wrongful discharge. The Court notified the parties that it would treat that argument as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and gave Silverman the opportunity to respond, which she has done. For reasons that will be explained, the motion to strike is denied. The motion for summary judgment is granted in part and denied in part. The motion for judgment on the pleadings is granted as to the claim of intentional infliction of emotional distress but denied as to the claim for wrongful discharge.

### SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.

2

R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

### THE MOTION TO STRIKE SILVERMAN'S DECLARATION

It is well established that a nonmoving party cannot avoid summary judgment by responding to the motion with an affidavit or declaration contradicting that party's earlier deposition testimony. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983). In these situations, however, only "where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted" despite the conflicts. *Id.* at 1366.

Here, the defendants say that certain paragraphs in Silverman's declaration contradict her prior deposition testimony. Document #46 at 4. None of the paragraphs, however, fall into the

3

*Camfield Tires* category. Silverman testified in her deposition that she complained to the EEOC on June 23, 2016, only about an incident on June 22, 2016. Paragraphs 12-20 and 26 of her recent declaration do not contradict this testimony because in them Silverman simply relates allegations that occurred before June 22 — she does not state that she reported those events to the EEOC on June 23. *See* Document #41. Paragraph 38 adds to but does not contradict her previous deposition testimony. Document #38-1 at 42. Paragraph 39 likewise adds to but does not contradict her previous deposition testimony because it explains that her *subsequent* conversations with the EEOC — after June 23 — addressed more than the June 22 incident. Document #41 at 39; Document #38-1 at 57. Similarly, paragraph 21 of Silverman's declaration, which explains that she believed someone's body language was racist, does not contradict but supplements her prior deposition testimony regarding the interaction. *See* Document #38-1 at 42; *see Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 892 n.7 (8th Cir. 1998) (declining to find a late affidavit was a sham; it did not contradict deposition testimony under *Camfield Tires* but supplemented it). Finally, Silverman's recent declaration evidence that Donna Stone discriminated against her does not contradict her deposition testimony because in her deposition she was equivocal on this point. *See* Document #38-1 at 32-35; *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) ("Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out."). The motion to strike is therefore denied.

### SILVERMAN'S CLAIMS AGAINST DONNA STONE INDIVIDUALLY

Silverman sued Stone in her individual capacity and in her official capacity as executive director of Trinity Village. Individual employees cannot be personally liable under Title VII. *McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3 855, 860 n.2 (8th Cir. 2001). Silverman's

Title VII claims against Donna Stone in her individual capacity therefore must be dismissed. Individual employees may, however, be liable under section 1981 if they intentionally cause an employer to infringe on a plaintiff's section 1981 rights. *Jones v. Forrest City Gro., Inc.*, 564 F. Supp. 2d 863, 869 (E.D. Ark. 2008).

### SILVERMAN'S CLAIM THAT SHE WAS TERMINATED BECAUSE OF HER RACE

Silverman asserts race discrimination in violation of Title VII, section 1981, and the ACRA. Section 1981 guarantees to all persons the same right to contract "as is enjoyed by white persons." 42 U.S.C. § 1981. Race discrimination claims under Title VII, section 1981, and the ACRA are all analyzed under the *McDonnell Douglas* burden-shifting framework when, as here, there is no direct evidence of race discrimination. *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677 (8th Cir. 2013); *Bennett v. Nucor Corp.*, 656 F.3d 802, 818 (8th Cir. 2011); *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999). Silverman therefore must first make a *prima facie* showing of intentional discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973). That is, she must show that she is a member of a protected class, that she was qualified for the position, and that she suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved. *See id.*; *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). If Silverman establishes a *prima facie* case, the burden then shifts to Trinity Village to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824-25. If this burden is met, Silverman must show that the proffered reason is actually a pretext for unlawful discrimination. *Id.* at 804, 93 S. Ct. at 1825. Silverman at all times bears the ultimate

burden "of proof and persuasion" that she was the victim of unlawful discrimination. *See Torgerson*, 643 F.3d at 1046.

Silverman has not met her burden of establishing a *prima facie* case of racial discrimination because the circumstances do not permit the court to infer that she was terminated because of her race. She points to various circumstantial evidence from the course of her employment that, she says, shows an intent to discriminate. Her evidence comes up short, however.

It is undisputed that Silverman was replaced by an African American woman. While not determinative, this fact is relevant and tends to undercut Silverman's claim that she was terminated because of her race. *Routen v. Suggs*, __ Fed. Appx. __, 2019 WL 2587606 at *2 (8th Cir. June 24, 2019), citing *Walker v. St. Anthony's Med. Ctr.*, 881 F.2d 554, 558 (8th Cir. 1989).

Silverman points to an instance nearly two years before her termination in which a coworker declared to executive director Stone, in Silverman's presence, that she would not work for a "n*****" and then immediately handed Stone her resignation. In some instances racial slurs or other insults are highly probative that a subsequent adverse employment action was motivated by race. *See Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 526 (8th Cir. 2019) (noting that manager's use of racial slurs evidenced a clear intent to discriminate against the plaintiff); *Stacks v. Sw. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1324 (8th Cir. 1994) (holding that a decisionmaker's comment that "women were the worst thing" that happened to the company was direct evidence of sex discrimination). But a single remark made by a non-decisionmaker in the process of resigning, "untethered as [it was] from the adverse employment action at issue" nearly two years later, does not raise any inference of intentional race discrimination by Stone or Trinity Village. *Hutton v. Maynard*, 812 F.3d 679, 686 (8th Cir. 2016); *see also Ward v. Int'l Paper Co.*, 2006 WL 1061951,

at *3 (E.D. Ark. Apr. 20, 2006) (manager's comment that it would be an excellent time for the plaintiff to retire, six months before he was terminated, did not support an inference of age discrimination in the decision to terminate him).

Silverman's declaration states that when she first took the job she was initially paid less than the prior Caucasian administrator of assisted living. Silverman has not provided any facts to show that she and the prior administrator had similar experience and qualifications, so the evidence does not allow the inference that the pay difference was racially motivated. And it is undisputed that Silverman received substantial raises in the course of her employment at Trinity Village.[2] In short, Silverman has wholly failed to connect her initial pay for her first six months at Trinity Village with her termination nearly two years later.

Silverman next notes that only she and her staff were initially required to clock in and out at Trinity Village while no other salaried employees had to do so. Approximately a year before she was terminated Silverman raised the issue with Stone, who ended the requirement. Silverman's evidence does not connect her race with the requirement that she and her staff had to clock in. Moreover, nothing connects the circumstances surrounding that requirement — which ended a year before Silverman's termination — with her termination.

Silverman insists that a Caucasian coworker, April Bogy, treated her poorly on the basis of race and that Stone did nothing about it. Silverman says that Bogy openly disrespected her, created needless disputes with her, refused to attend meetings she conducted, fabricated errors in her time sheets, and confronted her in a hostile manner, among other things. Silverman believes all these

---

[2] Silverman stated on the EEOC intake questionnaire that her employment began on September 23, 2014, with a pay rate of $42,000 per year and that her pay rate on June 23, 2016, was $52,000 per year. Document #28-2 at 1.

7

things were done on the basis of race. She says that "Bogy was always doing something to be racially insensitive and/or offensive." Document #41 at 8. In relation to one specific incident with Bogy, Silverman says that Bogy's "body language, tone, and gestured shaking and pointing her finger in [her] face" made it "clear" to her that Bogy's behavior was motivated by racial bigotry. *Id.*; Document #38-1 at 51. Regardless, however much Silverman believes that race played a part in Bogy's behavior, "[Silverman's] beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment." *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1457 (8th Cir. 1996). Silverman testified that Bogy never used any racial slurs. Document #28-1 at 3; Document #55-1 at 32-33. It is clear that the two women did not get along, but that fact alone does not show that Bogy's conduct was racially motivated. In any event, Bogy did not participate in the decision to terminate Silverman. The evidence is simply insufficient to allow a factfinder to infer from Bogy's conduct, or Stone's failure to correct it, that Stone and Trinity Village terminated Silverman because of her race.

Because Silverman has not sustained her burden to present a *prima facie* case that she was terminated because of race discrimination, her race discrimination claims for termination brought under Title VII, section 1981, and the Arkansas Civil Rights Act are dismissed with prejudice.

### SILVERMAN'S CLAIM OF RACE DISCRIMINATION BASED ON HOSTILE WORK ENVIRONMENT

In addition to her claim that she was terminated because of her race, Silverman's complaint references an incident on June 22, 2016, in which Bogy "confronted, verbally accosted, berated and scolded Plaintiff; and repeatedly put her finger in Plaintiff's face." Document #1 at 4. The complaint alleges that the defendants' treatment of Silverman was symptomatic of their longstanding practice "of hiring blacks, older workers and women . . . [and] subjecting them to hostile conditions of work,

8

higher level of scrutiny and more readily disciplined and discharge[d]." *Id*. When Silverman completed the EEOC intake questionnaire on June 23, 2016, she referenced the June 22, 2016 incident, explaining that Bogy "has continuously displayed insubordination to me and threaten[ed] me by pointing and shaking her hands in my face; when [she] was asked repeatedly by AD to stop." Document #28-2 at 2. In her formal EEOC charge dated July 13, 2016, Silverman stated, "During the last month of my employment I was subjected to a hostile work environment that consisted of harassment and intimidation." Document #1 at 7.

The Eighth Circuit has explained:

> To establish a claim for hostile work environment based on race, an employee must prove that "(1) [s]he is a member of a protected group; (2) [s]he was subject to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment." [*Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)]. Moreover, if an employee's hostile work environment claim is based on harassment by non-supervisory co-workers, the employee must also prove that the employer "knew or should have known of the harassment and failed to take proper remedial action." *Id*. (quoting *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir.2005)).
>
> In order for harassment to have affected a term, condition, or privilege of employment, the harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Consideration of this element of a hostile work environment claim "includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir.2002). "To decide whether a work environment is objectively offensive, ... we examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892-93 (8th Cir.2005) (quoting *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir.2004)). "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." *Bainbridge*, 378 F.3d at 759.

9

*Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014).

Silverman's allegation that she was subjected to a hostile work environment seems to be based primarily, though not exclusively, on Bogy's behavior. Silverman has not, however, presented evidence that Bogy's behavior, or any harassment or intimidation directed at Silverman, was racially motivated or that it was sufficiently frequent and severe to create a hostile work environment. *Sallis*, 408 F.3d at 476-77. Other than the one incident when an employee used a racial epithet and resigned, Silverman has presented no evidence that anyone at Trinity Village used racial slurs. In her deposition Silverman testified that she believed Bogy was racially insensitive because "she spoke as a white woman to a black woman," Document #28-1 at 21, but the fact that Bogy is white and Silverman is black, by itself, is not evidence that Bogy's conduct was racially motivated. Silverman has not presented evidence in the record to show that she was subjected to race-based harassment that affected a term, condition or privilege of employment. *Cf. Anderson v. Durham D & M, LLC*, 606 F.3d 513, 521 (8th Cir. 2010) (holding no dispute of fact existed simply because of the race of the individual involved in the termination).

Because Silverman has not sustained her burden to present a *prima facie* claim that she was subjected to a hostile work environment because of her race, her hostile work environment claims brought under Title VII, section 1981, and the Arkansas Civil Rights Act are dismissed with prejudice.

### SILVERMAN'S CLAIM THAT SHE WAS TERMINATED IN RETALIATION FOR COMPLAINING TO THE EEOC

Silverman's complaint also mentions retaliation for engaging in protected activity. Nowhere does she state on what statute her retaliation claim is based, but courts evaluate retaliation claims under Title VII, section 1981, and the ACRA the same. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013); *Brown v. City of Jacksonville*, 711 F.3d 883, 892 (8th Cir. 2013). For each, in the absence of direct evidence of retaliation, Silverman must present evidence from which a reasonable jury could find that she engaged in protected conduct, that she suffered a materially adverse employment action, and a causal connection between the two. *See Brown*, 711 F.3d at 893. On the causation element, Silverman must show that retaliation was the but-for cause of the adverse employment action. *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 819 (8th Cir. 2017); *see also Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015) ("To show a causal connection, a plaintiff must show that her protected activity was a but-for cause of her employer's adverse action."); *Williams-Raynor v. Ark. Dep't of Health*, 2018 WL 4473094, at *2-*3 (E.D. Ark. Sept. 18, 2018). If Silverman presents sufficient evidence to establish a *prima facie* case, the defendants must articulate a legitimate, non-retaliatory reason for the adverse action. *Liles*, 851 F.3d at 818. If they articulate such a reason, then Silverman must show that reason was actually a pretext for retaliation. *Id*.

It is undisputed that Silverman complained of race discrimination with the EEOC on June 23, 2016, by completing an EEOC intake questionnaire. Document #28-2. The EEOC's notice of charge of discrimination, addressed to Stone at Trinity Village, is dated June 29, 2016. Document #38-5. Silverman was terminated on July 11, 2016.

The defendants argue that the decision to terminate Silverman had already been made by the time they received notice of the EEOC complaint. Stone testified in her deposition that plans were already underway to terminate Silverman on June 27. Document #28-6 at 10-11. She says that she waited until July 11 to terminate Silverman because she did not want to pull her off medical leave in order to do so and because the plan was for Trinity Village's attorney to be present during the termination meeting. *Id.* at 10-12. It is true, as the defendants argue, that Silverman has testified that she does not know what day along this time line that Stone made the decision to terminate her. The evidence taken in Silverman's favor, however, supports an inference that Stone did not decide to terminate Silverman until after June 28, 2016.

After Silverman filed the EEOC complaint, but before Trinity Village knew about it, she worked two full days without incident. No mention was made of any issues or problems with her employment. Subsequently, she was out on medical leave from June 28 until July 11. While Silverman was first out on leave, Stone proceeded as though Silverman's employment would continue when she returned from sick leave. For example, on June 28 Stone sent a text message to Silverman stating that Stone had cancelled a meeting with a state official that Silverman had scheduled for the following day, explaining that she did so partly because she "knew [Silverman] would not want to miss [the] meeting." Document #38-9 at 2. Likewise, Stone sent an email to the state official stating that "[w]hen Sharon Silverman our assisted living administrator returns, she can reschedule the meeting." Document #38-6 at 1. A jury reasonably could infer from these two messages that as of June 28 Stone intended for Silverman's employment to continue. If a jury drew that inference, it would necessarily conclude that Stone's testimony that she decided to terminate

12

Silverman on June 27 is false. That conclusion, in turn, would allow the inference that Stone decided to terminate Silverman after receiving the EEOC notice of charge of discrimination.

The temporal proximity between Trinity Village's knowledge that Silverman filed an EEOC complaint and her termination then would create an inference of a causal connection. As noted, the EEOC mailed the notice of charge of discrimination on or shortly after June 29, 2016, and Silverman was terminated on July 11, 2016. *See Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 741 (8th Cir. 2017) (holding that temporal proximity was strong evidence of causation, in light of all the evidence, where the termination occurred eight days after protected activity); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2001) (holding that the short temporal proximity of "a matter of weeks" was sufficient to meet a *prima facie* case of causation).

Silverman has established a *prima facie* case of retaliation. The defendants must therefore articulate a legitimate, non-retaliatory reason for Silverman's termination. *Liles*, 851 F.3d at 818. They say that there were many reasons for terminating her. They cite a document which lists many examples of unprofessional conduct and rule infractions that Silverman allegedly committed, such as disclosing confidential financial information to others and placing documents that she did not understand into a shredder. Document #28-7. But, they say, the ultimate reason that resulted in her termination was Silverman's refusal to complete an important work assignment. Document #28-6 at 7 (describing it as the "straw that broke the camel's back"); Document #38-10 at 3 (describing it as "the incident that tipped the scale"). Violation of company policy is a legitimate, nondiscriminatory reason for termination, as is refusing to perform job assignments. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006); *Doss v. Frontenac*, 14 F.3d 1313, 1319 (8th Cir. 1994).

Silverman must therefore show that these reasons were a pretext for retaliation. *Liles*, 851 F.3d at 818. In showing pretext a plaintiff may point to evidence that, for example, the employer's explanation is "unworthy of credence because it has no basis in fact," or that "a prohibited reason more likely motivated the employer." *Torgerson*, 643 F.3d at 1047 (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006)).

Silverman has presented some evidence that the reasons stated by Stone and Trinity Village for terminating her are pretextual. First, as explained above, a jury could reasonably find that the emails that Stone sent before she received notice of Silverman's EEOC complaint are inconsistent with her claim that she decided to fire Silverman no later than June 27, 2016, before she received the EEOC notice. A jury reasonably could find from the sequence of events that the EEOC complaint caused her unanticipated termination.

Second, Silverman contends that the performance infractions listed in her termination paperwork are "fictitious." *See* Document #41 at 13. Her declaration says that at no time prior to her termination was she notified of any performance problems; she was never cautioned, counseled, or disciplined; and she received favorable performance reviews. *Id.* at 12. As Silverman argues, a wholly positive employment record is inconsistent with the defendants' characterization of her, upon her termination, as a perennial problem employee. The fact that she was nevertheless fired for performance reasons could give rise to a reasonable inference that a prohibited reason actually caused her termination.

Finally, and most importantly, Silverman has presented evidence that creates a genuine dispute regarding the factual basis for the primary reason offered for her termination. After an Office of Long-Term Care inspection revealed deficiencies in Trinity Village's dietary department in May

2016, Trinity Village needed to complete a plan of correction by July 5. Silverman explains that writing plans of correction were normally her duty, but Stone undertook to complete this one so Silverman would not have to work with Bogy, who supervised the dietary department, on it. Document #38-1 at 35-39. Silverman testified that at the end of the inspection in May she and Stone discussed the situation and that Stone expressly stated that she would write the plan of correction. *Id*. at 35. Two other employees of Trinity Village likewise have testified that Stone, without being requested to do so, assumed the responsibility for preparing the plan of correction. Document #38-11 and Document #38-12.

The parties agree that Stone called Silverman late in the workday on June 27 and inquired on the status of the plan of correction. Silverman responded that she had not written it because Stone was going to do it. Document #38-1 at 38; Document #28-6 at 3-4. The parties disagree as to the rest of the conversation. Stone says that she then directed Silverman to complete the plan of correction, and that Silverman refused, stating, "I'm not going to do it." Document #28-6 at 4-6. Silverman says that she repeatedly offered to write the plan of correction, even on a short turnaround, but that Stone again said that she would write it herself because "you and April [Bogy] don't get along." Document #38-1 at 36.

Stone described this conversation as "the incident that tipped the scale" in favor of terminating Silverman. According to Silverman and two other witnesses, however, Stone voluntarily took responsibility for preparing the plan of correction. If a jury were to believe that Stone voluntarily took responsibility for preparing the plan of correction, it could find that Stone and Trinity Village's claim that Silverman was terminated because she refused to prepare the plan is pretextual. *Torgerson*, 643 F.3d at 1047.

15

A jury could reasonably find that Silverman would not have been terminated but for her EEOC complaint. The defendants' motion for summary judgment is therefore denied as to Silverman's claims of retaliation.

### STANDARD FOR A RULE 12(C) MOTION

Generally, "a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n. 3 (8th Cir. 2010). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8(a)(2) does not require a complaint to contain detailed factual allegations, it does require a plaintiff to state the grounds of his entitlement to relief, which requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). The Court need not, however, accept as true legal conclusions, even those stated as though they are factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

### RULE 12(C) MOTION ON THE TORT OF OUTRAGE

Under Arkansas law, an outrage claim requires of the following elements:

(1)   the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct;

(2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community;

(3) the actions of the defendant were the cause of the plaintiff's distress; and

(4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Kelley v. Georgia-Pac. Corp.*, 300 F.3d 910, 912 (8th Cir. 2002) (quoting *McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998)). The Arkansas Court of Appeals has described this tort as "an extremely narrow tort, rarely recognized in Arkansas caselaw." *McAdams v. Curnayn*, 96 Ark. App. 118, 126, 239 S.W.3d 17, 22 (2006). Brill explains:

> Discharged employees have frequently asserted claims of outrage, in connection with wrongful termination claims against employers. Because employers have considerable latitude in dealing with employees, the courts have taken a strict view of outrage claims arising out of the discharge of an employee. A claim of outrage by an at-will employee cannot be based upon the mere fact of discharge, and accordingly most employee claims have been rejected as failing to satisfy the rigorous standards. However, in some instances the manner or the circumstances of the discharge has supported an outrage claim.

Howard W. Brill and Christian H. Brill, ARKANSAS LAW OF DAMAGES § 33:13 at 813 (6th ed. 2014).

Here, the allegations in the complaint, if proven, do not come close to establishing the tort of intentional infliction of emotional distress or outrage. Therefore, Silverman's claim for intentional infliction of emotional distress is dismissed.

### RULE 12(C) MOTION ON SILVERMAN'S CLAIM OF BREACH OF CONTRACT / WRONGFUL DISCHARGE

Silverman does not allege in her complaint that her contract was for a definite term or during good behavior, which means that so far as the complaint is concerned her employment was for an indefinite term. Historically, Arkansas courts have held that when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or

17

at-will. *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 245, 743 S.W.2d 380, 383 (1988). In *Sterling Drug*, the Supreme Court of Arkansas recognized an exception to the general rule that an employee at will may be terminated without cause. In that case, the court held that when an at-will employee is terminated in violation of the public policy of the state, the employee has a breach of contract claim for wrongful discharge. *Id*. at 249, 743 S.W.3d at 385. The Arkansas courts have not specifically addressed the issue of whether termination in retaliation for making an EEOC complaint falls within the exception created by *Sterling Drug*, but the Eighth Circuit has held, in *dicta*, that "a retaliatory discharge for filing an EEOC complaint likely would violate public policy[.]" *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005). Based on that *dicta*, the Court holds that Silverman's allegation that she was terminated in retaliation for complaining to the EEOC states a claim for wrongful discharge in breach of the employment contract. The Rule 12(c) motion as to that claim is therefore denied.

## CONCLUSION

The defendants' motions for summary judgment and their motion for judgment on the pleadings are GRANTED IN PART and DENIED IN PART. Documents #28 and #55. The motion to strike is DENIED. Document #45. Sharon Silverman's claims under Title VII against Donna Stone in her individual capacity are dismissed. All of Silverman's claims that her employment was terminated because of her race and her claims that she was subject to a hostile work environment because of her race are dismissed. Silverman's claim of intentional infliction of emotional distress is dismissed.

The issue to be tried is whether Silverman was terminated in retaliation for complaining of race discrimination. As to Stone and Trinity Village, that claim survives under section 1981 and the

18

Arkansas Civil Rights Act. As to Trinity Village, that claim also survives under Title VII and as a claim for wrongful discharge in violation of the employment contract.

IT IS SO ORDERED this 3rd day of July, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE